Statement.

---

# Richmond.

COMMONWEALTH v. POCAHONTAS COAL & COKE CO.

January 16, 1908.

Absent, Harrison, J.

1. MINERAL LANDS—*Erroneous Assessment—Motion to Correct—Allegations not Denied—Corporation Commission.*—Where the notice of a motion under Sec. 437a of the Code (1904) to correct an erroneous assessment of mineral lands recites that it was given "as required by the State Corporation Commission," which allegation is not denied, it must be accepted as true that the proceeding was instituted by the direction of said Commission.

2. MINERAL LANDS—*"Improved and Under Development."*—The phrase "improved and under development," as used in the statute for assessing mineral lands, means opened up mine entries and butt entries extending to solid coal, so as to render the land immediately accessible for practical mining.

3. MINERAL LANDS—*Value—Opinion of Trial Judge.*—The opinion of a trial judge as to the value of mineral lands for the purpose of taxation is entitled to great weight, where it appears that he resides in proximity to the lands, and saw the witnesses and heard them testify.

Error to a judgment of the Circuit Court of Tazewell county in a proceeding by motion on behalf of the commonwealth. Judgment for the defendant. Commonwealth assigns error.

*Affirmed.*

The opinion states the case.

*Attorney-General Wm. A. Anderson* and *T. C. Bowen,* for the commonwealth.

*Henry & Graham, A. W. Reynolds* and *S. D. May,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is a proceeding under Va. Code, 1904, sec. 437a, to correct the assessmnet for taxation for the year 1906 of certain coal lands owned by the defendant in error, situated in Tazewell county, Virginia.

The statute devolves upon the commissioners of the revenue the duty, on or before August 1, 1903, and every second year thereafter, on or before May 15, to specially and separately assess for taxation at their fair market value all mineral lands, fixtures and machinery thereon, within their respective districts; and to certify a copy of such assessment to the State Corporation Commission. The act also provides that if it shall appear that the property, or any of it, has not been assessed at its fair market value, the Commission shall direct the attorney for the commonwealth for the county or corporation in which the property is situated, to apply, in the name of the commonwealth, to the circuit court of the county, or the corporation court of the city, to have the assessment corrected. This writ of error is to the final order in the case made by the circuit court of Tazewell county.

In passing, we may notice the cross-error assigned by the defendant in error—namely, that the record fails to disclose such direction by the Corporation Commission as would justify the proceeding; and, consequently, that the circuit court was without jurisdiction to entertain the application.

In point of fact, the notice upon which the motion was founded recites that it was given "as required by the State Corporation Commission," which allegation was not denied, and must, therefore, be accepted as true.

The commissioner of the revenue assessed the coal lands in question, consisting of 8,039.89 acres, as follows:

    1,006.32 acres (barren land) at ...$  1.00 per acre;
    3,226.59 acres at .............. 10.00 per acre;
    1,112    acres at .............. 15.00 per acre;
    1,430.23 acres at .............. 25.00 per acre;
    1,264.75 acres at ..............100.00 per acre.

Commencing at the westerly boundary of the property, which is the least accessible to transportation, the commissioner assessed that portion, which, under present conditions, would likely be the last developed, at $10.00 per acre; and the successive tracts at $15.00, $25.00 and $100.00 per acre, respectively. The correctness of the valuation of the barren land is admitted; and the corresponding assessments by the circuit court advanced the $10.00 and $15.00 valuations to $25.00, and left the assessment of the 1,264.75 tract at $100.00 undisturbed.

The circuit court was of opinion that the commissioner's estimate of the value of the portion of the land "improved and under development" was too low, but that he had classified too large an area as "improved and under development." In the final result, however, the court reached the conclusion that one error about offset the other, and that substantial justice would be attained by allowing the original assessment of the 1,264.75 acre tract to stand.

It does not appear from the order just how much of the last-mentioned tract was regarded as "improved and under development," but there can be no question of the correctness of the court's conclusion that the entire boundary ought not to have been so classified. The evidence, though not altogether satisfactory as to values, shows that the defendant in error purchased these lands in the year 1901, at the average price of $42.00 per acre; that they are bare of timber, except such as is useful for

mining operations; and that $1.00 per acre is the fair market value for surface utilization.

The entire property is held by the Pocahontas Collieries Company under a 100-years' lease, which period, it is estimated, under present conditions, will be required to mine and market the coal. It also appears that a variety of considerations enter into and control the extent of successful mining operations in these fields—notably, the demand for coal and facilities for transportation. Experience with respect to this particular property shows that it is not practicable, under existing circumstances, to mine a larger coal-bearing area than 85 acres annually, or 170 acres during the assessment period of two years. It, moreover, appears from the evidence that this section of the coal fields is wholly dependent upon the Norfolk and Western Railway system for transportation, and that the present demand for coal and allotment of coal cars to which this operation is entitled, would not warrant a more rapid development of the property.

The direct evidence on the subject discloses that only 250 acres of the 1,264.75 acre boundary are "improved and under development"—that is to say, a sufficient area of the larger tract has been opened up by mine entries and butt entries extending to solid coal to render 250 acres immediately accessible for practical mining.

The improvement and development of this character of property is necessarily accomplished by gradual process; and to meet changing conditions, the legislature has wisely provided biennial assessments, so that the commonwealth may reap the benefit of progressive improvement and development on the one hand, and allow fair deduction to the tax-payer for lands that have been rendered barren on the other.

Adopting the foregoing criterion as a reasonable and correct exposition of the phrase "improved and under development," conformably to the evidence in the case, we are of opinion that there is no error in the order complained of.

Our attention has been called to the recent decision of this court in *Interstate Coal & Iron Co.* v. *Com'th,* 103 Va. 586, 49 S. E. 974, as promulgating a different rule for ascertaining the quantity of mineral lands "improved and under development." But the facts of the two cases are diverse.

The court in that case was dealing with a comparatively small coal-bearing area, susceptible of being mined in a few years. The property was also equipped with coke ovens; and the evidence showed that where two-thirds of the coal is converted into coke, it is a fair estimate to classify two acres to each coke oven as "improved and under development."

Here, we are confronted by essentially different conditions. The boundary under consideration includes over eight thousand acres of land, which, it is not denied, will require more than a century to mine. Besides, it was stated in argument, and not controverted, that the coke ovens, tipples, and other improvements employed in connection with this and other operations are not located on the property of the defendant in error, but on adjoining lands of the lessee. So, the standard adopted in the case referred to is neither available nor applicable in this instance.

In conclusion we may remark, that the proximity of residence of the learned judge of the circuit court to the coal fields, and the fact that he saw the witnesses and heard them testify, which gave opportunity to form a correct estimate of their intelligence and credibility, are factors which entitle his opinion to great weight. His finding is sustained by the evidence, and ought to be affirmed.

*Affirmed.*